# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHEN DISTRICT OF GEORGIA
### ATLANTA DIVISON

**CLEMENT CRADDOCK, Jr.,**
                                      **Plaintiff,**            **CIVIL ACTION NO. _____**

**vs.**

**XAVIER BECERRA,**

**IN HIS OFFICIAL CAPACITY AS**

**SECRETARY OF U.S. DEPARTMENT**

**OF HEALTH AND HUMAN SERVICES,**

**&**

**U.S. DEPARTMENT OF HEALTH**

**AND HUMAN SERVICES,**

**&**

**SHERRI A. BERGER, MSPH,**

**IN HER OFFICIAL CAPACITY AS**

**ACTING CHIEF OF STAFF**

**U.S. CENTERS FOR DISEASE**

**CONTROL AND PREVENTION**

**&**

**U.S. CENTERS FOR DISEASE**

**CONTROL AND PREVENTION,**

                                      **Defendants**


## COMPLAINT

Plaintiff Clement Craddock, Jr. ("Craddock") files this Complaint against the Center for Disease Control ("CDC").

## PARTIES AND THEIR ROLE IN THIS CASE

1.

Plaintiff Clement Craddock, Jr., ("Craddock") is a natural person and a resident of the State of Georgia.

2.

Craddock was an employee of the Centers for Disease Control and Prevention ("CDC"). During the time period at issue, Craddock worked as a Lead Safety and Occupational Health Manager, GS-0018-14.

3.

Craddock worked with the CDC in its Office of Safety, Security, and Asset Management (OSSAM) in Atlanta, Georgia.

4.

Craddock filed an EEOC complaint alleging that the CDC discriminated against him on the bases of race, sex, religion, color and disability, and that the CDC retaliated against him in connection with his Complaints and in response to his opposition to the CDC's actions against him. Craddock's Complaint was filed June 18, 2018.

5.

The Agency, the CDC, issued a decision on Craddock's claim on January 30, 2020. The bottom line of the decision was that the Agency's investigation of Craddock's allegations found no unlawful discrimination or retaliatory (action) was established.

6.

During the investigation, CDC had employees answer questions based on a standard questionnaire that was very general, and then created "affidavits" based on the responses to the questions, which were basically denials of wrongdoing delivered in a very suggestive format. Craddock was not allowed to obtain discovery during the investigation.

7.

Craddock appealed the January 30, 2020 CDC decision to the EEOC, and the EEOC affirmed the decision of the CDC on October 14, 2020. Craddock requested that the EEOC reconsider the October 14, 2020 decision, and the EEOC denied the request by Decision on Request for Reconsideration dated February 9, 2021.

8.

Both the Decision on the Appeal delivered on October 14,2020, and the Decision on Request for Reconsideration were entered by Carlton M. Hadden,

Director, Office of Field Operations of the EEOC. It is reported that under

Hadden, discrimination by federal agencies is found in less than 3% of cases.

9.

A key driver of the dearth of findings of discrimination in federal agency

discrimination cases is that the employee is deprived of the ability to conduct the

employee's own investigation and obtain meaningful discovery.

10.

Thus, Craddock files this federal action to obtain de novo consideration of

his claims with accompanying discovery.

11.

The Decision on Request for Reconsideration informed Craddock that he

has the right to file a civil action in an appropriate United States District Court

within 90 calendar days from the date he received the Decision, stating that the

presumption was that the decision was received within five (5) calendar days.

The Decision further stated that the office of Field Operations in Washington

D.C. mailed the Decision to Craddock in Austell, Georgia.   Craddock received

the decision at the earliest on Tuesday, February 16, 2021 in light of COVID,

which would be the same day that the method of counting time under federal law

when the period is less than seven days (excluding Saturdays and Sundays)

would conclude the five-day period.

12.

Craddock had 90 days after the date of the receipt of the Decision on Request for Reconsideration to file a civil action such as this one. Based on the earliest correct date of receipt of February 16, 2020, the 90th day thereafter would be Monday, May 17, 2021. Even if the presumption described in the Decision concerning receipt of the Decision on the fifth day after the Decision was mailed, this would make the day of receipt Monday, February 15, 2021 (mail not being delivered on Sunday February 14, 2021). Calculating the period this way, the 90th day thereafter is Sunday, May 16, 2021—however, under federal law, the falling of a deadline on a Sunday extends the period through the following Monday, May 17, 2021. Either way, the deadline for Craddock's filing this action is May 17, 2021, and so it is timely.

13.

The Decision on Request for Reconsideration firmly states that Craddock must name as the defendant in the Complaint the person who is the official head of the Agency, the CDC, or the Department head, identifying that person by his or her full name and official title. Craddock has therefore done so in this complaint.

14.

Defendant Secretary Xavier Becerra is the agency head of the U.S. Department of Health and Human Services (HHS) and is sued in his official capacity, and he is subject to the jurisdiction of this Court.

15.

Defendant HHS is an agency of the United States and it is subject to the jurisdiction of this Court.

16.

Defendant Sherri A. Berger, MSPH, is the Acting Chief of Staff for the Centers for Disease Control and Prevention (CDC) and is the agency head responsible for the challenged agency action. She is sued in her official capacity, and she is subject to the jurisdiction of this Court.

17.

Defendant CDC is an agency of the United States located within HHS and headquartered in Atlanta, Georgia, and it is subject to the jurisdiction of this Court.

## JURISDICTION AND VENUE

18.

This Court has federal question jurisdiction pursuant to 5 U.S.C. § 702 and 28 U.S.C. § 1331 as this matter involves questions arising under the Constitution of the United States and the Administrative Procedure Act.

19.

This Court has the authority to grant declaratory and injunctive relief in this matter pursuant to 28 U.S.C. §§ 2201 and 2202.

20.

Venue for this action properly lies in this district pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because one defendant resides in this judicial district under 28 U.S.C. 1391 (c)(2), and because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

21.

Under applicable federal procedure, this action is de novo and Craddock is entitled to discovery as in any other case filed in this Court, and to a decision on the merits of his case from this Court apart from the decision(s) of the EEOC.

**STATEMENT OF FACTS**

22.

Craddock initially complained to the Centers for Disease Control and Prevention, Office of Equal Employment Opportunity on June 20, 2018 and alleged that the CDC discriminated against him based on race, sex, religion, color, disability, age, and reprisal.

23.

Specifically, the CDC discriminated against Craddock as follows:

a.    Relocating him from the Emory Campus to the Chamblee Campus, in late May 2016,  for the express purpose of diminishing his standing with the CDC as a black man with an elevated title, a high GS ranking, and substantial responsibilities entrusted to him—a man exiled away from the nerve center of the CDC and made visually and practically invisible;

b.    Coupling the transfer of his office to Chamblee with a diminishment of duties and a degradation of this title, which accomplished the CDC's intent to diminish Craddock's status in the agency, that intent embodied in and personified by several of his supervisors, and acted on by them to Craddock's detriment;

c.    not providing Craddock with an office at the Chamblee campus for a five month period between May and September of 2016, intentionally and with the specific knowledge that lacking an office would make it difficult for  him to get his work done; indeed the very denial of the office cementing visually the reduction of Craddock's  role with the agency, and that visual was later exacerbated by  assigning Craddock an "office" about which there has been a debate: was it a former closet, a former storage room, or something better, that was still not an office?

d.    failing to provide him the same special office furniture and other office equipment, including a special computer keyboard and audio equipment, all of

which he had formerly utilized at the Emory Campus; failing to provide these items for a seven month period between May and December 2016, even though they were required by reasonable accommodations of his disabilities the CDC had granted to Craddock; CDC had acknowledged that it was obligated to provide reasonable accommodations to Craddock in light of disabilities from which Craddock suffered at the relevant time, some of which were associated with his military service, and all of which had been recognized for a long time by the CDC as chronic conditions that required specific accommodations. Specifically, Craddock had and still has a hearing impairment and mobility impairments caused by herniated disks in his back, neck issues, knee problems which required surgery, and other musculoskeletal problems that affect his sitting, standing, and walking, as well as chronic PTSD from his military service;

e.      failing to respond to expressed concerns from Craddock specifically about the obvious discriminatory image CDC chose to display, where much lower ranking GS-7s and GS-9s had office, and GS-14 Craddock, around the office, looked like a homeless man;

f.      denying, when Craddock proposed a solution which would allow him to stop his humiliation and get work done at his house where all needed equipment was present—Craddock's request to work from home was denied despite the fact that many others in the office were allowed to work from home;

g.      being accused of not working and being nastily told by his then supervisor Darin Carroll that Darin was the only supervisor to fire 9even) a GS-15—Carroll specifically saying this as a threat while he was coupling his threat with false accusations that Craddock wasn't working;

h.      putting Craddock, who had an excellent work record prior to his association with Carroll and another supervisor, Kristi Meadows, on consecutive performance plans on January 31, 2017, July 27, 2017, and February 5, 2018, as a form of harassment, giving Craddock intentionally low and unjustified ratings, while at the same time ironically acknowledging that he should be performing some of the duties they had taken away from him.

24.

The CDC had previously made a specific decision to demote Craddock and to accuse him in connection with the demotion of not performing duties which had been assigned, not having people to supervise to "justify" his supervisory designation, and not being charged with "emergency response coordination" in fact, although that was one of his designated duties. This along with the threat and the unjustified performance plans, issues about his step pay increase, slammed doors in his face, intentionally inconvenient assignments around holidays such as Thanksgiving, intentionally disregarding Craddock's requests for leave, intentionally assigning work to Craddock not appropriate for a GS-14, that could

have been performed by other available employees with the appropriate, much lower grade, and cooking up unnecessary spats regarding Craddock's work and use of leave time  put Craddock in a position where he first had to take FMLA leave and eventually believed he was going to have to retire to avoid being fired.

25.

The CDC has tried to justify its treatment of Craddock by saying his whole group of employees were being funneled into a new branch, what would become the Quality and Compliance Branch. Were that the case, given Craddock's seniority and GS-14 ranking, he should have been allowed to compete for the management position over the new branch. However, when Craddock raised this very point with Carroll, this was the point at which Carroll, who had not even had the courtesy of introducing the heir apparent to his GS-14, delivered his threat, and then thereafter retaliated against Craddock, with the transfer, the no office, the no legally required reasonable accommodations, etc.

26

The CDC had the option to as a part of the reorganization they claimed they were effectuating of giving Craddock staff to supervise. However, the CDC was antagonistic to black men, particularly more experienced black men like Mr.

Craddock, actually performing in a supervisory role. So the choice for the new Quality and Compliance Branch was a white woman.

27.

The CDC chose the path of belittling and denigrating Craddock's service to the agency, and of exposing him to the later charge that he was not really acting as a supervisor, by removing employees from his supervision, trying to bring their claim into a position of truth to put Craddock in subordinate place.

28.

The CDC also intentionally changed its prior practices of how emergency response coordination was carried out. In the past, Craddock was directly and heavily involved in the emergency response coordination effort, even traveling internationally several times as part of that effort and supervising a team of employees as part of that effort.

29.

The CDC made choices repeatedly to deprive Craddock of staff to supervise, emergencies to respond to, and duties to perform, and actively hired other

employees, white men and women, for the specific purpose of encroaching on or completing divesting him of the functions he had previously served the CDC.

30.

The CDC marginalized Craddock for the specific purpose of justifying the hidden fait accompli it was planning, that Craddock would be forced to retire.

31.

The CDC discriminated against Craddock because of his race, his age, his sex, and his disability, in effect castrating him, and leaving him impotent in the organization, to accomplish its goal to force Craddock to retire--- for the purpose of replacing him with someone of the age, sex, race, and non-disabled status required.

31.

The CDC accomplished the fait accompli and Craddock did retire, being constructively discharged,

34.

The CDC did not provide legitimate non-discriminatory reasons for its actions against Craddock, and the CDC when it considered the claim through the

ALJ did not even require that the individual employees of EEOC who were discriminating against Craddock provide evidence that was subject to cross examination, so that their purported non-discriminatory reasons for Craddock's treatment were tested. Instead, sua sponte the ALJ announced that the ALJ would rule on summary judgment.

35.

Instead, the CDC and later the EEOC decisions simply recited that non-discriminatory reasons had "been asserted" or had been articulated. But no inquiry was made as to whether the reasons were a pretext.

36.

Faced with an intolerable and unsustainable situation, Craddock had tried to advocate for himself to the CDC, pleading with the CDC to provide just the required accommodations CDC had already recognized it was required to provide given Craddock's physical and mental state. The CDC, in violation of the law, unilaterally decreed that the CDC would not provide the legally required accommodations to Craddock, and the CDC retaliated against him for insisting they be provided.

37.

Craddock had been a reliable performer with much more of a historical personal stake in the CDC than the more recent interlopers who went on a witch hunt against him.  Even as a worker with multiple disabilities, Craddock performed at a high level  as long as he was receiving the legally required accommodations so that he could perform the essential functions of his job. Craddock was discriminated against by Defendants—because of his disabilities, in violation of the Americans With Disabilities Act.

38.

The CDC acted with specific intent to harm Craddock, by denying him the reasonable accommodations he was entitled to in his job, by publicly shaming him as a black man when they wanted him out, and by retaliating against Craddock when they decided they did not want to bother with providing the legally required accommodations, regardless of his protestations.

**COUNT ONE: VIOLATIONS OF TITLE VII: 42 U.S.C. 2000e**

39.

Bostock v. Clayton County makes the question of whether Title VII is violated very easy. Would the decision have been different had Craddock been other than black? The obvious answer to this question is of course.

40.

Bostock v. Clayton County is focused totally on the complaining

individual—in relation to the individual Plaintiff's claim of discrimination, his

membership in the protected class such as race, or color, or sex only has to be a

motivating factor for the adverse employment decision (lower standard); or a "but

for" cause of the adverse employment action (higher standard)-- in order to be

actionable as a Title VII violation.

41.

As to Craddock, the CDC's decisions had as a but for factor his race, color

and sex. He was discriminated against in favor of white people, and women. He

was displaced by white women and white men, and actually was not even

considered as a possible manager over the new the Quality and Compliance

Branch.

42.

Craddock did not retire voluntarily but instead was constructively discharged.

43.

Accordingly, Craddock is entitled to all the relief Title VII provides to him against the CDC.

## COUNT TWO: VIOLATIONS OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT

44.

Again, as provided in <u>Bostock,</u> a motivating factor for, if not a but for cause of, the adverse employment actions Craddock suffered was his age, as he was in the protected class under the ADEA being over 40. People under 40 were favored

over Craddock because they were younger, and therefore Craddock is entitled to

all the relief the ADEA provides to him against the CDC.

## COUNT THREE : VIOLATIONS OF THE AMERICANS WITH DISABILITIES  ACT

45.

Again, as provided in Bostock, a motivating factor for, if not a but for cause

of, the adverse employment actions Craddock suffered was his numerous

disabilities which the CDC was already obligated to provide accommodations for.

46.

Craddock was in the protected class under the ADA being disabled and

entitled to reasonable accommodations. People not disabled were favored over

Craddock because they did not require reasonable accommodations, and therefore Craddock is entitled to all the relief the ADA provides to him against the CDC.

## COUNT FOUR: VIOLATION OF FREE SPEECH RIGHTS

47.

Craddock received adverse employment actions because he spoke out against the racism, sexism, ageism and disability discrimination practiced by the CDC generally—apart from his own victimhood.

48.

The CDC violated 42 USC 1981, 1983 and Plaintiff's First Amendment Rights under the U.S Constitution, in so doing, entitling Craddock to damages.

## COUNT FIVE —ATTORNEYS'FEES AND PUNITIVE DAMAGES

### 49.

The CDC's actions showed an entire want of care amounting to a conscious of indifference to the consequences of their actions, and/or were willful and wanton, and/or were motivated by malice, and/or showed a specific intent to harm Craddock.

### 50.

Therefore, the CDC is liable to Craddock for punitive damages in an amount to be determined in the enlightened conscience of the jury in an amount of at least $250,000.

### 51.

Craddock is also entitled to attorneys' fees under the statutes cited above.

WHEREFORE, Craddock prays that the court grant him a judgment against Defendants including various components as follows:

l.  A judgment for Craddock against CDC for back pay from the date of his resignation until judgment is entered against CDC on this claim, in an amount

to be proven at trial, plus front pay as appropriate, or reinstatement as appropriate.

2. An order providing additional remedies to Craddock such as provision of the value of health insurance benefits, vacation pay, paid time off, retirement or pension benefits, and other relief as the Court deems proper.

3. A judgment for Craddock against CDC for reasonable attorneys' fees to be to be determined under applicable procedure;

4. A judgment in favor of Craddock for punitive damages against the CDC because of their willful and wanton conduct, malice and their conscious indifference to the consequences of their actions, up to the cap of $ 250,000, or if the jury finds that the CDC acted with specific intent to harm Craddock, so that punitive damages are uncapped, in an amount to be determined pursuant to applicable procedure.

5. Such other and further relief as the Court deems just and proper.

**PLAINTIFF HEREBY DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this   16th day of May, 2021.

**DALZIEL LAW FIRM**

s/ *Charles M. Dalziel, Jr.*

Charles M. Dalziel, Jr.

Georgia Bar No. 203730

31 Atlanta Street Suite 200

Marietta GA 30060

(404) 735-0438

chuck@dallziellawfirm.com

Attorney for Plaintiff